# PHILADELPHIA v. PENNSYLVANIA HOSPITAL.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued March 26, 1891—Decided October 5, 1891.

[To be reported.]

1. The authority vested in municipal corporations to require property owners to curb, pave, and keep in repair the sidewalks in front of their respective properties, does not rest upon the same basis as the right of local taxation considered in Olive Cemetery Co. v. Philadelphia, 93 Pa. 131, and other like cases.

2. Such a requirement imposes a duty upon the property owner, in the nature of a police regulation; and the imposition upon him of the expense incurred in enforcing the regulation, on his failure to comply therewith, is not in any proper sense a tax: Wilkinsburg Bor. v. Home for Aged Women, 131 Pa. 117.

3. Wherefore, an institution of purely public charity, whose property is

Statement of Facts.

exempt by statute from taxation, is not exempt from assessment for the cost of curbing, under the ordinance of the city of Philadelphia enacted May 3, 1855, in pursuance of authority conferred by the acts of April 16, 1838, P. L. 626, and February 2, 1854, P. L. 43.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 106 January Term 1891, Sup. Ct.; court below, No. 27 June Term 1889, C. P. No. 1.

To the number and term stated of the court below, the city of Philadelphia, to the use of John Mack, brought scire facias against the Contributors to the Pennsylvania Hospital, upon a municipal claim for curbing laid in front of defendant's property, on the west side of Forty-second street.

The defendant filed an affidavit of defence, averring that the claim of the plaintiff for curbing was a tax levied and assessed against the defendant; that defendant was incorporated by act of May 11, 1751, 1 Sm. L. 208; that, by the acts of March 19, 1845, P. L. 187, and April 18, 1853, P. L. (1854) 834, its estate and property were expressly exempted from all taxation. The affidavit then proceeded:

"6. Defendant further avers that the real estate in question forms part of a large tract of land, the whole of which is in actual continuous daily use and occupation for the purposes of an insane asylum for males and females, belonging to and exclusively managed by the Contributors to the Pennsylvania Hospital, and upon this tract are erected the various buildings in which the said insane patients live. The whole of the remainder of this tract of land forms the grounds immediately around the said hospital building, and the entire tract, including the whole piece against which this lien is filed, is annexed to and necessary for the occupancy and enjoyment of the same, and actually lies within the high walls which have been built to prevent the escape of insane patients, while affording them the amplest opportunity for recreation and exercise.

"This tract, as well as all the rent- and profit-producing property of the defendant, both real and personal, has been and is

---

*Cf. Philadelphia v. Penna. Hospital, 134 Pa. 171, as to the cost of laying water pipes.

Statement of Facts.

appropriated entirely and exclusively for the purposes specified in its act of incorporation, namely, the ' relief of the sick and insane poor;' and neither the president nor any of the directors of the corporation get any salary or emolument of any kind for managing and superintending the affairs of the institution, nor can any profit be derived from the property of the said corporation, directly or indirectly, or can be obtained from any connection therewith.

"7. That the said corporation has no capital stock; and there is annually more money expended by the institution, in carrying out the purposes of its incorporation, than is received from all sources of its income; and this deficit is made up by annual contributions and donations made to it from time to time by private individual donations and contributions.

"8. That the said corporation is maintained by voluntary contributions from its members and others, and from the income derived from the capital accumulated from time to time by gifts, devises, and bequests.

"9. That no distinction is made in the reception of patients by the defendant on the ground of sex or color, and the said corporation is a charitable trust open to the public indefinitely and conducted without a view to corporate or individual profit, and is an institution of purely public charity, and no such profit arises, but it is founded, endowed, and maintained by public and private charity.

"10. The department of this corporation known as the hospital for the insane, heretofore referred to in paragraph 6, is conducted for the same charitable objects as the hospital for physical injuries and disease, between Spruce and Pine streets and Eighth and Ninth streets, in the city of Philadelphia.

"All the funds of the institution, unless especially earmarked, may be devoted, at the discretion of the board of managers, in whole or in part, to the maintenance of either or both of these institutions, there being no difference in the method of management between the two institutions. Separate books are kept solely for the purposes of convenience, and to ascertain the cost of carrying on the various branches of each department, for the department in West Philadelphia and in the city proper; but the use of the funds of the institution for the support and maintenance of either or both these institutions,

Arguments.

as well as the amount to be devoted to each, lies solely within the discretion of the board of managers.

"The whole institution, including the insane department in West Philadelphia and the hospital in the city, is purely and exclusively charitable, and no profit of any kind is derived in any way, directly or indirectly, from either of these departments.

"11. In order to extend as widely as possible the benefits of the charity, those applicants for admission, both to the hospital at Eighth and Spruce streets and to the insane department in West Philadelphia, who can afford to do so, are required to pay a fee which shall, as nearly as possible, represent the actual cost to the institution of the board of such patient, together with a reasonable charge for the lodging of such patient, and for the use by such patient of the plant of the defendant; but the total charged to any patient in no case exceeds the actual cost to the hospital of such patient's maintenance, including such charge for lodging.

"12. Many patients are admitted absolutely free, both in the male and in the female department, and both in the hospital and insane department.

"If the institution were a private corporation carried on for the purpose of profit, and if all persons admitted to it paid an amount equal to the average amount paid by all the pay patients, the institution as a whole would be operated at a very heavy loss, the excess of expense over average amount paid being nearly double."

Statements were exhibited showing the value of each parcel of land owned by the hospital, the receipts from pay patients, and the deficits made up from contributions, general or special.

After argument, the court, BIDDLE and BREGY, JJ., without opinion filed, made absolute a rule for judgment for want of a sufficient affidavit of defence; whereupon the defendant took this appeal, specifying that the court erred:

1. In entering judgment against the defendant.

*Mr. George W. Biddle* (with him *Mr. H. G. Ward*), for the appellant:

1. This case is wholly different from Wilkinsburg Bor. v. Home for Aged Women, 131 Pa. 117, where the question was

Arguments.

upon the construction of the borough act authorizing borough officers to compel lotowners to abate nuisances in front of their premises. It was not a question whether an assessment for the original laying of the sidewalks would be a tax or not. The decision was put upon the ground that, under § 13, act of April 3, 1851, P. L. 320, the law casts directly upon the property owner a duty to repair sidewalks, in the nature of a police regulation.

2. In our case, however, the authority to compel the owner to curb is derived from § 40, consolidation act of February 2, 1854, P. L. 43, and the power to pass ordinances relating to the paving of footways, including the curbing thereof, is contained in the same section, and is given by the same identical words as the power to pass ordinances for the paving of streets and the laying of water pipes. The latter, as against the adjoining property owner, are instances of a legal tax from which the defendant is admittedly exempt.

3. It has frequently been held that the paving of streets and sidewalks, and the curbing thereof, at the expense of adjoining property owners, are in the exercise of the taxing power; "local tax for local purposes:" Washington Ave., 69 Pa. 352; Pray v. Northern Liberties, 31 Pa. 69; Hammett v. Philadelphia, 65 Pa. 151; Olive Cemetery Co. v. Philadelphia, 93 Pa. 131; Wistar v. Philadelphia, 80 Pa. 505; Philadelphia v. Tryon, 35 Pa. 402. Observe that in Wistar v. Philadelphia, supra, the statute construed was the very section with which we are dealing in the present case.

*Mr. Edwin O. Michener*, for the appellee :

There is no material variation between the method of enforcing the paving, curbing and repair of footwalks in the city of Philadelphia, and that which obtains in the boroughs of the state: § 3, act of April 16, 1838, P. L. 626; § 40, act of February 2, 1854, P. L. 43; ordinance of May 3, 1855; Ordinances of 1855, 141. The distinction between street paving, sewers and water pipes, on the one hand, and the paving and curbing of sidewalks on the other, is clearly marked by Mr. Chief Justice PAXSON in Wilkinsburg Bor. v. Home for Aged Women, 131 Pa. 117. That the requirement that property owners shall pave and curb their footways, is a police regulation, is

shown by the following authorities: Cooley on Const. Lim., *588; Cooley on Taxation, 396, 398; In re Goddard, 16 Pick. 504; Lowell v. Hadley, 8 Metc. 180; State v. Charleston, 12 Rich. 702; Washington v. Nashville, 1 Swan 177; Wythe v. Nashville, 2 Swan 364; Franklin v. Mayberry, 6 Humph. 368.

. OPINION, MR. JUSTICE STERRETT:

In this action of scire facias sur municipal claim for curbing, etc., the defendant's affidavit of defence was adjudged insufficient, and judgment was accordingly entered in favor of plaintiff for the amount of its claim. From that judgment this appeal was taken by defendant. The facts are fully presented in the statement of claim and affidavit of defence. There is no question as to the curbing having been properly done, nor as to the cost thereof. The sole question is whether, upon any legal ground, either as a tax or under the police power of the city, the assessment in question can be sustained.  ·

It is contended by defendant that an assessment for curbing is a tax; and inasmuch as its "estate and property, both real and personal, are by law exempt from the payment of tax of any kind whatsoever," the plaintiff's claim cannot be enforced; and in support of the position, Olive Cemetery Co. v. Philadelphia, 93 Pa. 129, and other cases, recognizing the right of local taxation for certain local purposes, are cited. But it is a mistake to assume that the authority vested in municipal corporations to require property owners to curb, pave, and keep in repair the sidewalks in front of their respective properties, rests upon the same basis as the right of local taxation recognized in the cases referred to. There is a marked distinction between them. In the former, a duty is imposed on the property owner in the nature of a police regulation. In the latter, no such duty is cast upon him. This distinction was clearly pointed out by the present Chief Justice in Wilkinsburg Bor. v. Home for Aged Women, 131 Pa. 117, which, in principle, is identical with this.

In Cooley on Taxation, 398, the learned author says: "The cases of assessments for the construction of walks by the sides of the streets in cities and other populous places are more distinctly referable to the power of police. These footwalks are not only required, as a rule, to be put and kept in proper

condition for the use of the adjacent proprietors, but it is quite customary to confer by municipal charters full authority upon municipalities to order the walks, of a kind and quality by them prescribed, to be constructed by the owners of adjacent lots at their own expense, within a time limited by the order for the purpose; and that, in case of their failure so to construct them, it shall be done by the public authorities, and the cost collected from such owners or made a lien upon their properties. When this is done, the duty must be looked upon as being enjoined as a regulation of police, made because of the peculiar interest such owners have in their walks, and because their situation gives them peculiar fitness and ability for performing, with promptness and convenience, the duty of putting them in proper state, and of afterwards keeping them in a condition suitable for use. . . . . The courts distinguish this from taxation, on the ground of the peculiar interest which those upon whom the duty is imposed have in its performance," etc. Again, on page 588, he says: "The distinction between a demand for money under the police power and one under the power to tax, is not so much one of form as of substance. The proceedings may be the same in the two cases, though the purpose is essentially different. The one is made for regulation, the other for revenue. If, therefore, the purpose is evident, there can be no difficulty in classifying the case and referring it to its proper power." The same distinction was recognized in re Goddard, 16 Pick. 504, 509.

The ordinance of May 3, 1855, passed in pursuance of the authority vested in councils by the acts of April 16, 1838, and February 2, 1854, provides that "the footways of all public streets and highways . . . . . shall be graded, curbed, and paved, and kept in repair, at the expense of the owners of the ground fronting thereon." The third section of same ordinance provides that the owner shall have the right to do the work of paving and curbing and keeping in repair said footways, and, on his failure to do so, the city shall do it at his expense, and may file a lien for the amount. This requirement is clearly not for the purpose of revenue. It is simply a regulation under the police power of the municipality. On principle, as well as on the authority of our own and other cases, the amount expended by the city in enforcing the regulation

Statement of Facts.

.is not in any proper sense of the word a tax. It is a liability incurred for neglect to perform a duty imposed by the police power of the city. In so holding, we adhere to the principle ruled in Wilkinsburg Borough v. Home for Aged Women, supra.

Judgment affirmed.