Fisher et ux. *v.* City of Philadelphia, Appellant.

Argued September 26, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ. Nos. 73 and 75, October T., 1932, affirmed. Nos. 72 and 74, October T., 1932, .

*John J. K. Caskie,* Assistant City Solicitor, and with him *Aaron W. White,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for appellant.—A municipality is not an insurer: Tauber v. Wilkinsburg, 309 Pa. 331; Casey v. Siciliano, 310 Pa. 238; Corbin v. Philadelphia, 195 Pa. 461.

*Robert M. Bernstein,* and with him *Barnet Lieberman,* for appellees, Harry Fisher and Anna Fisher, cited: Hickey et ux. v. City of Philadelphia, 103 Pa. Superior Ct. 486.

*Simon Pearl,* and with him *Henry Aaronson* and *Gabrial David Weiss,* for appellees Francis X. Hartman, William Toll and Helen Rossman.

OPINION BY KELLER, J., February 1, 1934:

These four appeals grow out of one action and will be disposed of in one opinion.

Harry Fisher and Anna Fisher, his wife, (appellees in Nos. 75 and 73, respectively), brought an action of trespass in the municipal court against the City of Philadelphia to recover the damages sustained by them respectively in consequence of a fall by Mrs.

Fisher on February 13, 1928, caused by the defective condition of a sidewalk along Anderson Street, corner of East Chelten Avenue, Philadelphia; which defect had existed sufficiently long, it was claimed, to put the city upon constructive notice of its condition.

The city caused writs of scire facias to be issued, under the Act of April 10, 1929, P. L. 479, to bring in as additional defendants, who, it claimed, were liable over to it in case of a recovery against it, (1) William Toll, Francis X. Hartman and Helen Rossman (appellees in No. 72), who, it was averred, owned and controlled the property abutting on said defective sidewalk and were, as to the city, primarily responsible for the defect in the footway in front of it; and (2) Joseph Cassel—amended to Joseph Passel—(appellee in No. 74), who, it was averred, controlled, possessed and had the right of possession of said premises and was, as to the city, primarily responsible for the defect in the footway pavement in front thereof.

Toll, Hartman and Rossman filed an affidavit of defense to the scire facias, in which they did not deny the averment that they owned the property fronting on the defective sidewalk, but denied that they controlled the same, or were primarily responsible for the alleged defective footway, because they averred that on August 13, 1927 they leased the premises, known and numbered as 1201 E. Chelten Avenue, to Joseph Cassel for the term of three years beginning December 20, 1927; and that prior thereto, for at least two years before December 20, 1927, said Joseph Cassel had been in possession and control as tenant of said premises; and that under the lease of August 13, 1927, the said Joseph Cassel undertook to keep said premises in good order, condition and repair.

Passel (Cassel) filed no affidavit of defense.

(1) We will first consider the appeals which question the liability of the city to the plaintiffs, Harry and Anna Fisher.

The accident causing the injury occurred in the following manner, according to the plaintiff's witnesses. Mrs. Fisher, accompanied by her six year old son, at about 2 o'clock in the afternoon of a clear, bright day, was walking on the east side of Anderson Street northwardly from Chelten Avenue. They had just alighted from a trolley car and were on their way home from a shopping trip. She was carrying some packages. The boy was walking to her right. The sidewalk, which was a cement one six feet wide, did not extend the whole way to the curb, three feet of dirt plot being between the edge of the cement walk and the curb. The outer or western edge of the cement walk was cracked or broken in several places, making holes at the edge of the cement walk, the one here involved being about sixteen inches long, eighteen inches wide and three inches deep. A short distance north of this hole in the sidewalk the steps leading from a side door of the building to Anderson Street encroached on the sidewalk, taking up nearly half of the cement sidewalk at that point. As Mrs. Fisher and her son approached the steps, the son, in order to get past the steps walked in front and slightly to the left of his mother. She saw the hole in the pavement and was walking sufficiently away to the right or east to avoid it. As they got opposite the hole, the boy for some unknown cause stumbled and the mother instinctively stepped forward to catch him or keep him from being hurt, and her left foot went into the hole, causing the fall and its consequent injury. There was evidence on behalf of the plaintiff that the holes in the sidewalk had been there for about four months; the city's witnesses testified it was in the same condition that it was in that day for about two years, (72-a and 77-a).

We think, under the evidence, the questions of (1) the city's negligence and (2) the plaintiff's contributory negligence were for the jury, and that it would have been error for the court to rule upon them as

matter of law. Had the plaintiff, without any un-
foreseen occurrence, walked into the hole, while not
looking where she was going, she could not recover.
But that is not this case. She was keeping far enough
to the right of the hole to pass it safely. There was
no sidewalk at all on the other side of the street. The
involuntary step taken by her to save her small child
from falling should not convict her of contributory
negligence as matter of law. See Dunfee v. Phila.,
97 Pa. Superior Ct. 413; Hickey v. Phila., 103 Pa. Su-
perior Ct. 486, 157 A. 26; Corbin v. Phila., 195 Pa.
461, 45 A. 1070. This disposes of the first, second and
fourth assignments in these appeals. The third as-
signment, which relates to the action of the court in
sustaining an objection to a question asked one of
plaintiff's witnesses, must be overruled, because the
question did not fairly state the evidence of the plain-
tiff which was called to the witness' attention. Mrs.
Fisher had testified in chief, (p. 31-a), that her son
had been walking on her right until they approached
the steps, when he went in front of her. "He was just
in front of me, because the—we could not pass the
steps without him *going a little in front towards my
left*". If counsel attempt to state to one witness what
another has testified to, he must do it correctly. Her
testimony, in that respect, did not conflict with her
witness, Mrs. Seward's, but was in agreement with it.

(2) We then come to the appeals relating to the
additional defendants brought in by scire facias under
the Act of 1929.

For the purpose of proving the ownership by Hart-
man, Toll and Rossman of the premises abutting on
the defective sidewalk, and the possession of the same
by Passel, the city offered in evidence the writs of
scire facias which had been issued on praecipe of the
city, the original defendant, to bring them in as ad-
ditional defendants to the action. The additional de-

fendants objected and the court refused the offer. This was error.

The Act of 1929, supra, made no provision for the filing of a *statement of claim* by an original defendant who claimed that some third party was liable over to him in case of a recovery against him and whom he desired brought in as an additional defendant. The Supreme Court in the case of Vinnacombe v. Phila., 297 Pa. 564, 147 A. 826, pointed out the practice to be pursued, viz., the original defendant files a praecipe for scire facias setting forth the grounds on which he claims the additional defendant is liable over to him, and these grounds are set forth in the writ of scire facias substantially as stated in the praecipe. To this writ the additional defendant files an affidavit of defense with respect to such matters as he would have to file an affidavit of defense, if a separate action were brought against him by the original defendant on the cause of action thus stated. The averments in the writ of scire facias, which require an affidavit of defense, are to be considered just as if they were contained in a statement of cause of action filed in a separate suit; and, in so far as they must be answered by an affidavit of defense, are taken as admitted if not sufficiently denied.

Any action which the City of Philadelphia, in case of a recovery against it in this suit, could bring against the additional defendants whom it claimed to be responsible over to it, would properly be by action of assumpsit; Phila. v. Reading Co., 295 Pa. 183, 189, 145 A. 65; and an averment in the statement of claim of ownership of the premises, not denied in the affidavit of defense in such suit, would be admitted, and could be put in evidence by offering the averment to that effect in the statement and calling attention to the fact that it was not denied in the answer; or if no affidavit of defense was filed, that none had been filed.

The affidavit of defense filed by Hartman, Toll and Rossman did not deny *ownership* of the premises in question. Its denial was limited to the averment as to being in control. Hence the offer, limited as it was in purpose, should have been received. No affidavit of defense was filed by Passel. The offer of the writ of scire facias against him, for the purpose of proving his possession and right of possession of the premises, was likewise admissible as to him. The court below subsequently recognized that its action as respects Passel was wrong; but reasserted that no error had been committed as to Hartman, Toll and Rossman.

Proof that Hartman, Toll and Rossman owned the property abutting on the defective sidewalk was the very foundation of the city's right to recover over against them. Without it no superstructure of liability could be erected. Hence, in refusing to admit the city's offer in this respect the court below deprived the city of the foundation upon which its claim for reimbursement from the owners rested.

At the conclusion of the city's case, counsel for Hartman, Toll and Rossman moved for a non-suit on the ground "that according to the witnesses produced by the city there was absolutely nothing the matter with this pavement, and therefore, assuming for the sake of argument, that they are the owners, there is nothing to charge them with liability." With the basic evidence, on which the city's claim for reimbursement rested, ruled out, the court was obliged to enter a non-suit against the "owners"; but not for the reason advanced by their counsel. The evidence of the city's witnesses exculpating it from blame had no effect on the right of the city to claim reimbursement from those primarily liable for the defect in the sidewalk, if the jury believed the plaintiff's witnesses rather than the city's. The case as respects the additional defendants, must be viewed the same as if

the city had been obliged to pay the claim of the plaintiffs and had sued the owners in assumpsit, after due notice of the pendency of the prior suit, for reimbursement. In such case the fact that the city had claimed, and its witnesses had sworn, on the trial of the original action, that there was no hole in the sidewalk as claimed by the plaintiffs, could not be used to defeat its right of action against the "owners", after a verdict in favor of the original plaintiffs settled that there was such a hole. Nor could it here. Nor was the city's right of reimbursement barred by the statute of limitations as claimed by the additional defendants. The statute of limitations in such case does not begin to run against the city in favor of the property owner until the date of the judgment against the city or payment thereof: Ashley v. Lehigh & Wilkes-Barre Coal Co., 232 Pa. 425, 81 A. 442.

The court, of its own motion, also entered a nonsuit as to the city's claim against Passel.

Counsel for the "owners" now argue in this court that because several witnesses for the city,—policemen on their beat,—referred to the property as being in possession of Cassel, as tenant, there could be no liability on the part of the owners; but this by no means follows.

The additional defendants offered no evidence. The lease annexed to the "owners' " affidavit of defense was not offered in evidence and cannot be considered by us on this appeal. Notwithstanding the lease, the owners of the property might still be liable to third persons, and to the city, by way of reimbursement, (1) if the sidewalk was in a defective condition when the lease to Passel was made; or, (disjunctively), (2) irrespective of its condition at the time the lease was made, if notice of a permanent defective condition requiring its relaying or repair, was given the owners prior to the accident.

We have had occasion to consider this matter in

the case of Briggs v. Phila. et al., 112 Pa. Superior
Ct. 50, and the opinion by our Brother BALDRIGE
demonstrates that an owner of property does not
relieve himself—so far as the public and the
municipality are concerned—of the responsibility
of keeping the sidewalk in front of his prop-
erty in good and safe condition—as respects per-
manent defects—by renting it to a tenant; that while
as between himself and the tenant the latter may be
responsible for the repairs, to the relief of the land-
lord, as respects the public and the municipality which
represents them, the landlord will remain responsible
for injuries resulting from permanent defects in the
sidewalk, *provided* he has notice of their existence for
a sufficient length of time to enable him to repair it.

This responsibility is based on the *statutory duty*
imposed on the *owner* of real estate to keep the side-
walks or footways in good condition. See Acts of
March 25, 1805, Sec. 5, 4 Sm. L. 233; April 10 1826,
Sec. 2, 9 Sm. L. 216; April 16, 1838, P. L. 626, Sec.
3; February 2, 1854, P. L. 21, Sec. 40, p. 43; May 16,
1891, P. L. 75, Sec. 11. These statutes authorize the
City of Philadelphia to require the laying of side-
walks and the repair of the same by the *owner* of the
property abutting thereon, and on his failure to lay
or repair such walks, after notice to do so, the muni-
cipal authorities may do the necessary work and as-
sess the cost *upon the property,* in front or along
which said walk so laid or repaired shall be situate,
and *file a lien therefor,* or collect the same by action
of assumpsit. The "owner" referred to in the Act
of 1891, supra, does not mean "the tenant in posses-
sion," as was the construction in Schott v. Harvey,
105 Pa. 222, relating to the duty, under the Act of
June 11, 1879, P. L. 128, of erecting fire escapes on
buildings; for in the Act of 1879 no authority was
given the municipality to erect the fire escape and *file
a lien against the property* for the cost thereof.

As respects sidewalks along public streets, the public has the right to use the whole of the unoccupied portion from the building line to the curbstone, and the primary duty of keeping it in repair rests upon the *owner* of the abutting premises: McLaughlin v. Kelly, 230 Pa. 251, 79 A. 552. That the premises at the time of the accident were in possession of a tenant does not relieve the owner of his duty to inspect and repair the pavement: Ibid, p. 256. Hence we have a long line of cases in this State holding, that as respects permanent defects in the sidewalk, the owner is liable to third persons injured as a result of such defects, and to the municipality for reimbursement for payment on account therefor, even though the premises were at the time of accident in possession of a tenant, *provided* that notice of such defect was given the owner a sufficient time before the accident to repair it and he failed to do so. Among them are: Ashley v. Lehigh & Wilkes-Barre Coal Co., 232 Pa. 425, 81 A. 442; Brookville v. Arthurs, 152 Pa. 334, 25 A. 551; Brookville v. Arthurs, 130 Pa. 501, 18 A. 1076; Duncan v. Phila., 173 Pa. 550, 34 A. 235; McLaughlin v. Kelly, 230 Pa. 251, 79 A. 552; New Castle v. Kurtz, 210 Pa. 183, 59 A. 989; Levick v. Patterson, 65 Pa. Superior Ct. 261; Carson v. Mackin, 23 Pa. Superior Ct. 50; Mintzer v. Hogg, 192 Pa. 137, 43 A. 465. While the last named case was overruled by Lindstrom v. Penna. Co., 212 Pa. 391, 394, 61 A. 940, it was only in so far as it held that the owner out of possession was liable for damages resulting from a defective sidewalk even although no knowledge or notice to him of the defect had been shown (see page 394); the Lindstrom case holding that a landlord out of possession cannot be held liable for personal injuries sustained by a fall due to a hole in a pavement *caused by the removal of a single brick,* where there is no evidence that the defect had existed for any length of time, or *that the defendant had notice of it*

and had refused to repair it. In other respects, Mintzer v. Hogg has been cited with approval since. See Phila. v. Reading Co., 295 Pa. 183, 145 A. 65.

And the owner is not relieved of responsibility or liability by the fact that the sidewalk was in good condition when the premises were leased to the tenant, provided the defect complained of was a permanent one and notice of its existence had been given the owner. In both Brookville v. Arthurs, 152 Pa. 334, (see p. 335) and Ashley v. Lehigh & Wilkes-Barre Coal Co., 232 Pa. 425, (see p. 426), it was expressly stated that the sidewalk was in good condition when the premises were leased, and yet after notice to the owner of a permanent defect and his failure to remedy it, the *owner* was held liable to reimburse the municipality for the damages it had been required to pay because of such defect. Besides, in the Ashley case the lease expressly required the tenant to make repairs (p. 426).

We find nothing in the recent cases of the Supreme Court which overrule these prior decisions.

In Phila. v. Merchant & Evans, 296 Pa. 126, 145 A. 706, chiefly relied upon by appellant, an examination of the case shows that no notice of the defect in the sidewalk which formed part of the driveway into the yard of the leased premises had been given the owner out of possession. See the same case in 289 Pa. 578, 137 A. 926.

The Supreme Court has time and again impressed upon us that "General expressions, in every opinion, are to be taken in connection with the case in which those expressions are used": Kates' Est., 282 Pa. 417, 424, 128 A. 97; Cohens v. Virginia, 6 Wheat. 264, 399.

The distinction, as respects the liability of the owner, between permanent defects in the sidewalk, requiring its relaying or substantial repair, and merely temporary or transient dangers, such as snow and ice, (New Castle v. Kurtz, supra; Mitchell v. Sinn,

308 Pa. 1, 161 A. 538; Beebe v. Phila., 312 Pa. 214, 167 A. 570), or a cellar door negligently left open, (Harte v. Jones, 287 Pa. 37, 134 A. 467), for which the tenant in possession alone is liable, was clearly pointed out by Mr. Justice MOSCHZISKER in Phila. v. Bergdoll, 252 Pa. 545, 97 A. 736, where suit had been brought against the owner of premises by the City to reimburse it for damages it had been required to pay because of injury resulting from an accumulation of ice on the sidewalk. After distinguishing between the Ashley case (232 Pa. 425), where notice of a permanent defect had been brought home to the owner out of possession, and New Castle v. Kurtz, (210 Pa. 183) where there was no such notice to the owner, the opinion writer said: "Finally, the language employed in the discussion of each particular case must be considered with reference to the peculiar facts there involved; and the duty of a landlord under a state of facts such as shown in McLaughlin v. Kelly, 230 Pa. 251, 256, where a standing defect in a pavement, the origin of which antedated the lease, was permitted to continue, although the owner regularly visited the premises during the occupancy of his tenant, and thus was put upon notice, is quite a different matter from the duty of an owner out of possession, in a case like the present, where a mere accumulation of snow and ice caused a transient danger to arise, and where there was no evidence of facts from which even constructive notice to the landlord could be found; and this distinction must be kept in mind in considering what is said in the McLaughlin case concerning the duty of a landlord to take notice" p. 551.

There is no similarity whatever between the responsibility, if any, resting on an owner out of possession, where the tenant fails to remove snow or ice, or lets a cellar door in the sidewalk remain open, or one of his patrons lets a milk bottle fall on the pavement,

(Wolk v. Pittsburgh Hotels Co., 284 Pa. 545, 131 A. 537), or some such purely transient danger, and that affecting him where after notice of a permanent defect in the sidewalk he does nothing to remedy it. In the latter case the city has a statutory right, after notice, to repair the defect and file a lien against the real estate itself—not merely against the lessee's interest in the lease; thus showing that his responsibility is not wholly divested by the lease. The liability to pay the cost of laying the pavement is not a tax, but is incurred for *neglect* in performing a *duty* imposed by the police power of the city: Phila. v. Penna. Hospital, 143 Pa. 367, 22 A. 744; Wilkinsburg v. Home for Aged Women, 131 Pa. 109, 18 A. 937.

As was said in Bears v. Ambler, 9 Pa. 193,—which ruled that a tenant in possession always is, *and the landlord may be,* liable for injury to a third person arising from negligence—"So far as the public is concerned, it is nothing to them who may be ultimately liable for repairs as between landlord and tenant." The city may be able to recover from either, (Reading City v. Reiner, 167 Pa. 41, 46, 31 A. 357), and in this proceeding may bring in both of them as additional defendants (Act of 1929, supra, p. 479), leaving the ultimate liability between them to be settled later.

The statutory right of the city to notify an owner, out of possession, that the sidewalk abutting his property is worn out or permanently defective and to require him to relay or repair the same is undisputed; so is its statutory right, on the owner's failure to relay or repair the sidewalk pursuant to such notice, to do it for him and file a lien against the property for the cost thereof. With this statutory duty resting on the owner, even when the premises are leased to a tenant, it would be an anomalous condition of affairs if after the city had notified the owner to relay or repair the sidewalk, but before the work had been done, due to his neglect to obey the notice, an

240

injury to a pedestrian should occur and the city was mulcted in damages by the injured party, if the city had no recourse over against the owner for reimbursement of the damages caused by his neglect, but was confined to a claim against a probably irresponsible tenant. We do not so construe the decisions. "Whenever the abutting owner is *by law bound* to keep the highway in repair, he is *liable for an injury caused by his negligence,* and ...... the municipality, if subjected to an action by reason of such negligence, has recourse over to him: Brookville v. Arthurs, 152 Pa. 334": City of Chester v. First Nat. Bank, 9 Pa. Superior Ct. 517, 520; Ashley v. Lehigh & Wilkes-Barre Coal Co., supra, pp. 426, 428, 429.

In appeals Nos. 73 and 75 October Term, 1932, the judgments are affirmed.

In appeals Nos. 72 and 74 October Term, 1932, the assignments of error are sustained; the judgments are reversed, the judgments of non-suit are stricken off and a new trial is awarded.