Wright et ux. *v.* Scranton, Appellant, et al.

Argued March 2, 1937.

Before KELLER, P. J., CUNNINGHAM,

BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John R. Edwards,* Associate City Solicitor, with him *Jerome I. Myers,* City Solicitor, for appellant.

*Francis D. Mahon* and *James J. Powell,* with them *William J. Fahey* and *Robert J. Ruane,* for appellees.

OPINION BY PARKER, J., July 15, 1937.

This was an action in trespass by plaintiffs, husband and wife, against the city of Scranton to recover damages for injuries suffered by the wife as the result of a fall on a defective sidewalk at the dividing line between two properties. The city, the original defendant, by writs of scire facias brought upon the record the additional defendants, John McLane and William Wallace, owners of adjoining properties abutting on the sidewalk where the accident occurred. On trial the court gave binding instructions in favor of the defendant McLane; the jury found separate verdicts for the plaintiffs against the city of Scranton and found for the defendants Wallace and McLane in the issue between the original defendant and the added defendants.

The city has appealed and complains of the refusal

of its motions for judgment n. o. v. and for a new trial. It argues three propositions, to wit, that the manner in which the trial judge directed challenges of the jury to be taken constituted reversible error; that the wife plaintiff was guilty of contributory negligence as a matter of law; and that under the evidence the jury could not find a verdict against the municipality and exonerate both the property owners. We will consider the questions raised in that order.

1. Twenty-eight jurors were called for examination and the plaintiffs, the city, Wallace and McLane, were each allowed four challenges. The interests of the city and those of the property owners were antagonistic, as were the interests of the additional defendants between themselves, as will appear later from a recital of the facts. Sixteen challenges were therefore allowed, which was the correct number: Act March 29, 1860, P. L. 344 (17 PS 1171); *Shaw v. Megargee,* 307 Pa. 447, 161 A. 546. The complaint is not as to the number of peremptory challenges allowed but as to the order in which they were exercised. The additional defendants were represented by the same counsel. The plaintiffs, the city, and counsel for the additional defendants made alternately, one at a time, twelve challenges leaving four challenges to be exercised, which were then taken by the additional defendants. Each took four peremptory challenges. The city excepted to the ruling of the court directing the order in which peremptory challenges should be exercised. We do not regard this as reversible error but agree with the court below that it would have been better practice to have required each additional defendant to exercise his challenge in order.

In the absence of any statutory regulation or applicable rule of court, the order of challenging jurors is within the sound discretion of the trial court and that discretion will not be interfered with unless abused to the prejudice of the legal rights of the party objecting:

35 C. J. 418, § 482; *Pointer v. U. S.*, 151 U. S. 396, 14 S. Ct. 410. "As has been said repeatedly the right of peremptory challenge is not of itself a right to select but a right to reject jurors": *Com. v. Brown*, 23 Pa. Superior Ct. 470, 498. There is nothing in the record that affords any ground for an assumption that the rights of the city were prejudiced in any respect. "When the panel was reduced to twelve jurors, no objection was made to any of those selected and placed in the jury box": *Moffatt v. Carbondale*, 314 Pa. 31, 33, 170 A. 269. "A defendant is entitled to an impartial jury, but not to any particular juror or jurors": *Com. v. Crow*, 303 Pa. 91, 100, 154 A. 283; *Moffatt v. Carbondale*, supra. The first assignment of error must be dismissed.

2. The trial court submitted to the jury the question of the wife plaintiff's contributory negligence and the jury exonerated her of that charge. Should the court have declared her guilty of contributory negligence as a matter of law? We think not. Since the plaintiffs have verdicts we will view the evidence in a light most favorable to them. On October 19, 1930, at about 8:30 P. M., the plaintiff, Myrtle Wright, was walking northward on a sidewalk on the west side of Birney Avenue in the city of Scranton. It was a very dark night and visibility was only slightly improved by artificial light. At the line of the Wallace and McLane properties where the sidewalks of the two additional defendants met, there was a sheer drop or offset of from four to four and one-half inches. When Mrs. Wright arrived at this point she fell to the ground, stumbling over the irregularity, and suffered the injuries of which she complains. She had not been over that location for eight years, did not know there was any defect in the walk, and could not see the depression when she approached it. One witness testified that after the fall it was difficult on account of darkness, to see the irregularity and it was

necessary for her to feel with her hands in order to discover the exact nature of the offset. The irregularity had existed in its present condition for as much as six years to the actual knowledge of those responsible for the care of the city streets. Mrs. Wright was walking in advance of two companions. She testified that she was looking straight ahead, keeping her eyes focused in a straight line on the sidewalk, and that she could not see the depression.

Appellant, to convict the plaintiff of contributory negligence, relies alone on this testimony of one of Mrs. Wright's companions as given at a former trial: "Q. Neither you nor Mrs. Gallagher nor Mrs. Wright were paying any special attention where you were going? A. No, sir. Q. That is right, isn't it? A. Yes, sir. Q. Just walking along and talking without paying any attention to the sidewalk in front of you; is that right? A. Yes, sir." But this witness said that she did not see Mrs. Wright fall but saw her when she was down. It was therefore not possible for her to know that Mrs. Wright was not looking when she fell, particularly in view of the fact that Mrs. Wright was walking ahead. However, if we view this evidence in a light favorable to appellant and assume that it contradicted Mrs. Wright's testimony and other evidence of this particular witness, it was for the jury to harmonize the testimony or determine which would be accepted. This assignment of error is without any merit.

3. The serious complaint is based on the fact that the jury found a verdict against the municipality and at the same time found in favor of both property owners. Appellant contends that the court should have instructed the jury that the finding of a verdict for plaintiffs against at least one of the defendants was a condition precedent to finding a verdict for the plaintiffs against the municipality. This makes necessary a reference to further facts.

In 1915, pursuant to a city ordinance, a sidewalk of flagstone was laid in front of the McLane property and a cement walk was constructed in front of the Wallace property. It was shown that employees of the engineering department of the city furnished stakes for the grade of the walk. The two pavements were laid on a uniform grade and at the same level. The cartway was paved and curbs installed in 1925. Beginning in 1925 or 1926, there was a general subsidence of the ground on the west side of Birney Avenue in the block in question due to the mining of coal from a substratum, and this affected the level of the ground in the cartway and the sidewalk north of the McLane property and on the lots of some of the abutting owners. When the Wallace and McLane sidewalks were laid they presented an even surface in front of both properties, but in 1925 or 1926 the concrete walk in front of the Wallace property sank so that at the junction with the McLane walk there was a sheer drop of from four to four and one-half inches. The McLane walk remained as it had been and on a level with the street curb and was in the same condition at the time of the trial as it was when laid. Substantially all of these facts were shown by plaintiffs' witnesses and corroborated in all details by a witness called by the city. Council, the director of public works, and the engineering department had actual notice of the condition of the sidewalk on the west side of Birney Avenue in this block. In any event, there was ample evidence that the condition had existed for such a time as to give the city constructive notice of the defect which caused the injuries to Mrs. Wright.

The owner, or tenant in possession, is primarily required to keep in repair the footway pavement in front of the property owned or occupied by him: *McLaughlin v. Kelly*, 230 Pa. 251, 256, 79 A. 552; *Brown v. White*, 202 Pa. 297, 51 A. 962; *Levick v. J. A. Patterson Co.*, 65 Pa. Superior Ct. 261; *Fisher v. Phila.*, 112 Pa.

Superior Ct. 226, 170 A. 875. Consequently, where a recovery is had against a city by reason of a defect in a footway, the property owner or the tenant, as the case may be, is liable over to the city for the amount of such recovery: *Vinnacombe v. Phila. & Am. S.*, 297 Pa. 564, 147 A. 826; *Phila. v. Merchant & Evans Co.*, 296 Pa. 126, 145 A. 706. The liability of the city is secondary: *Phila. v. Reading Co.*, 295 Pa. 183, 145 A. 65.

While a condition relating to a sidewalk might arise by virtue of some act of the city or its agents for which it would be exclusively liable, the pleadings and proofs here would not support a verdict for the plaintiffs on any theory other than that the defect which caused the injury suffered was one for which Wallace was primarily liable and for which the city was only secondarily liable. The basis of the plaintiffs' action and the proofs supporting the recovery against the city were, in substance, that the defendant Wallace failed to restore a sidewalk then out of repair to its former level at a uniform grade with that of his neighbor McLane, and that the city failed to perform a duty incumbent on it to require the property owner to make the necessary repairs and to see that the cartways and sidewalks were in a reasonably safe condition for travel. The primary fact supporting the claim was a condition of the sidewalk for which the property owner was primarily responsible.

Not only is a property owner liable over to the city, but the one secondarily liable by giving "definite, certain and direct" notice of the pending suit (*Chester v. Schaffer*, 24 Pa. Superior Ct. 162) may use the judgment rendered against him in a suit against the one primarily liable: *Orth v. Consumers Gas Co.*, 280 Pa. 118, 121, 124 A. 296. "When notice is thus given, the judgment, if obtained without fraud or collusion, will be conclusive against [the owner] whether he has appeared or not": *Fowler v. Jersey Shore Boro.*, 17 Pa. Superior

Ct. 366, 372. Also, see *Phila. v. Reading Co.,* supra (p. 188).

As was said in the Vinnacombe case, supra (p. 569), one of the purposes of the sci. fa. act of April 10, 1929, P. L. 479 (12 PS 141), was "to save the original defendant from possible harm resulting from loss of evidence, as might result if compelled to await the end of the suit before proceeding against those who were primarily liable in whole or in part. Hence, the statute is to be liberally construed to advance the legislative purpose." Certainly the one secondarily liable is not to be prejudiced by the sci. fa. act in his rights as against the principal actor.

There is no evidence in the record which will support a verdict against McLane or against the city by reason of the negligence of McLane. In fact, the city's own testimony showed conclusively that the defect complained of was in no way chargeable to McLane and that his walk was in the position that it should have been. In addition, the burden was on the plaintiffs or the city, as the case might be, to establish the negligence of McLane. This they failed to do and the court properly directed a verdict for McLane. The verdict in the issues between the city and McLane and the plaintiffs and McLane should therefore not be disturbed. The parties have had their day in court on these issues. "The court has the right......to grant a new trial to, or to enter judgment non obstante veredicto in favor of, any one of the parties, without disturbing the other verdict in the case": *Vinnacombe v. Phila. & Am. S.,* supra (p. 574).

As to Wallace, there was ample evidence to support a finding that Wallace was negligent. As we have pointed out, the sole negligence on the part of the city alleged or proved was by reason of a secondary liability and the city was called to answer only by reason of its failure to see that the property owner fulfilled his ob-

ligation to maintain his footway in a condition safe for travel. The jury, however, rendered an inconsistent verdict when they said, in effect, that the city was negligent but that the property owner was not. If the property owner's sidewalk was not out of repair there was no liability upon the part of the city. The error of the jury is explainable only on the theory that the jury misapprehended the law and is chargeable to the fact that the court failed to instruct the jury that they could not find a verdict for the plaintiffs against the city if they exonerated Wallace. The failure of the trial judge to so charge constituted basic error and the city is entitled to have the action reviewed by virtue of its general exception to the charge. See *Schwartz v. Jaffe,* 324 Pa. 324, 330, 331, 188 A. 295, and *East Broad Top Transit Co. v. Flood et al.,* 326 Pa. 353, 192 A. 401. It might be proper to follow the course pursued by the Supreme Court in the East Broad Top Transit case and allow the verdict in the issue between the plaintiffs and the city to stand if it were not that we would create an incongruous situation. If we followed that plan here and granted a new trial in the issue between the city and the property owner and the verdict of the plaintiffs against the city were allowed to stand, then on a retrial the city would undoubtedly offer the judgment recovered against it as conclusive against the property owner as to negligence and the amount of damages recoverable. The property owner would then urge that he had been exonerated by the specific finding of the jury in the former trial.

We regret that it is necessary to disturb the issue between the plaintiffs and the city, but justice cannot be done the parties without so doing. The situation disclosed here is distinguished from the East Broad Top Transit case by the additional fact that there negligence appeared upon the part of the transit company, the original defendant, in not maintaining a machine oper-

ated by its driver Flood in working order, and for that defect the original defendant was primarily liable. We are therefore compelled to grant a new trial in the issue between the plaintiffs on the one hand and the city of Scranton and Wallace on the other hand and in the issue between the city of Scranton and Wallace.

Judgment reversed and new trial awarded in accord with this opinion.