359 F.2d 564
 CITY OF PITTSBURGH, a Municipal Corporation
v.
UNITED STATES of America, Appellant.
 No. 15343.
 United States Court of Appeals Third Circuit.
 Argued December 3, 1965.
 Decided April 21, 1966.
 
 Jack H. Weiner, U. S. Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.
 Robert Engel, Asst. City Sol., Pittsburgh, Pa. (David Stahl, City Sol., Pittsburgh, Pa., on the brief), for appellee.
 Before HASTIE, GANEY and FREEDMAN, Circuit Judges.
 FREEDMAN, Circuit Judge.
 
 
 1
 The district court granted summary judgment against the United States as indemnitor in favor of the City of Pittsburgh, against whom a pedestrian had obtained a jury verdict in a tort action in the state court for the negligent maintenance of a sidewalk adjoining premises owned by the United States.
 
 
 2
 These circumstances at once present the critical problem whether a judgment obtained in a state court on a jury's verdict in a suit against the municipality is conclusive in the municipality's suit for indemnity from the property owner, where the property owner is the United States. For by the Federal Tort Claims Act Congress consented to suits against the United States for negligence with the express limitations that exclusive jurisdiction be in the district court (28 U.S.C. § 1346(b)) and that "any [such] action against the United States * * * shall be tried by the court without a jury * * *." (28 U.S.C. § 2402).
 
 
 3
 In the present case, a pedestrian who had fallen on the sidewalk of the Victory Building in Pittsburgh, which was owned and occupied by the United States, sued the City of Pittsburgh in the Court of Common Pleas of Allegheny County, Pennsylvania, for the recovery of damages for her injuries. The City of Pittsburgh gave notice to the United States of the suit and undertook to bring the United States upon the record as an additional defendant. The United States filed preliminary objections, in which it alleged that the courts of the Commonwealth of Pennsylvania had no jurisdiction over it. The City of Pittsburgh thereupon filed in the United States District Court for the Western District of Pennsylvania (Civil Action No. 61-352) a petition to remove the state court action. The district court denied the petition. Thereafter the Common Pleas Court sustained the preliminary objections of the United States and dropped the United States as an additional defendant, on the ground that it was immune and had not consented to the jurisdiction of the state court.
 
 
 4
 A year later the state court action between the injured pedestrian and the City of Pittsburgh was tried before a jury which returned a verdict in the amount of $1,100. on which judgment was entered on April 16, 1964. On June 3, 1964 the City of Pittsburgh paid the amount of the judgment with interest and record costs, which totaled $1,165.27, and the judgment was marked satisfied of record.
 
 
 5
 The City then brought the present action against the United States in the District Court. It recited the pedestrian's claim, the giving of due and timely notice to the United States of the date of the trial in the Court of Common Pleas after the failure of its efforts to remove the case to the district court and to join the United States as a third-party defendant in the state court, the jury's verdict, the judgment thereon, and its payment thereof. The City relied in its complaint on the Federal Tort Claims Act. The Act provides: "* * * [T]he district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages * * * for * * * personal injury * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (28 U.S.C. § 1346 (b)). The City alleged that in the circumstances of this case, under Pennsylvania law a private person would be liable as an indemnitor to the City of Pittsburgh in the amount which it had paid in satisfaction of the judgment.
 
 
 6
 In its answer to the complaint the United States in effect denied negligence on its part, alleged that the pedestrian was guilty of contributory negligence, and that plaintiff, the City of Pittsburgh, failed to state a claim upon which relief could be granted.
 
 
 7
 The district court granted plaintiff's motion for summary judgment. It held that the United States as the adjoining property owner was primarily liable and therefore required to indemnify the City on the judgment which the injured party obtained against it. It held that the United States could not relitigate the questions of negligence or contributory negligence or the amount of the damages sustained by the injured pedestrian, because all these matters were concluded against the United States by the jury's verdict in the state court action. The court held that the requirement of the Federal Tort Claims Act that the liability of the United States and the amount thereof must be adjudicated by a federal court sitting without a jury was satisfied by its decision in which it directed judgment in favor of the City of Pittsburgh and against the United States by way of indemnity. City of Pittsburgh v. United States, 236 F.Supp. 809 (W.D. Pa.1965).
 
 
 8
 We believe the matter is not susceptible of so simple a solution.
 
 
 9
 Under Pennsylvania law the owner or tenant in possession of property has a primary obligation to keep the abutting sidewalk in repair, and the municipality is secondarily liable for its failure to perform its duty of policing the streets and seeing to it that the property owner performs his obligation. In cases where the injured pedestrian chose to sue the City rather than the property owner the Pennsylvania courts evolved the means by which the municipality when secondarily liable could make the judgment obtained against it conclusive on the property owner. They held that if the City, as the party secondarily liable, gave notice of the pending suit to the property owner, who was primarily liable, and thus afforded him the opportunity to participate in the defense, he would be bound by the judgment.[1] In 1929 Pennsylvania adopted its Scire Facias Act (Act of April 10, 1929, P.L. 479, (12 Purdon's Pa.Statutes Annot. § 141)), which for the first time authorized a defendant to bring on the record an additional defendant who is either alone liable or jointly liable with him to the plaintiff or liable over to him for any judgment obtained by the plaintiff.[2] In Vinnacombe v. Philadelphia, 297 Pa. 564, 147 A. 826 (1929), the Pennsylvania Supreme Court adapted the Act to effectuate the municipality's right of indemnity from the property owner in sidewalk cases. The court held that the City, which was defendant in a suit by a party injured by a defect in a sidewalk, could bring upon the record as additional defendants the property owner and the tenant in possession, who the City alleged had failed to keep the pavement in repair. Thereby a multiplicity of suits was avoided and the original defendant was saved from the possible harm of loss of evidence which might occur if it was compelled to await the end of the suit against it before proceeding against those who were primarily liable.[3]
 
 
 10
 In the present case the City gave notice to the United States in order to bind it as the primarily liable owner by the judgment which might follow in the pedestrian's suit against the City. The City then sought to invoke Pennsylvania's present third-party practice by bringing the United States in as liable over to it on any judgment which the pedestrian might obtain against it. This attempt, as we have seen, failed because the state court acknowledged its lack of jurisdiction over the United States.
 
 
 11
 Although at one time the doctrine of sovereign immunity had such vitality that a waiver of it was strictly construed (see United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)), the purpose of the Federal Tort Claims Act to permit those injured by the negligence of employees of the United States to recover damages to the same extent as if the United States were a private person expresses so strong a public policy that the statute has been deemed to be highly remedial and has received a liberal construction. United States v. Muniz, 374 U.S. 150, 165-166, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 383, 70 S.Ct. 207, 94 L.Ed. 171 (1949). This overriding purpose, expressed in the statute, has provided the guide to the interpretation of the Act,[4] and it has been applied in some circumstances where its literal language might have resulted in a restricted meaning. Thus, its language authorizes suits "on claims against the United States, for money, damages * * * for injury or loss of property, or personal injury or death * * * under circumstances where the United States, if a private person, would be liable to the claimant." Nevertheless the view has ultimately prevailed that the United States may be sued by a subrogee of the injured party,[5] by an indemnitee who has paid the injured party's claim,[6] and that it may be joined originally with other defendants as a joint tort-feasor,[7] and may also be impleaded as a third-party defendant to enforce contribution against it as a joint tort-feasor.[8] In such cases, the courts have worked out in a practical manner the requirement that an action against the United States must be determined by a federal judge without a jury. In the Yellow Cab case, supra, where the original and third-party actions were tried together by the district judge without a jury, the Government opposed the procedure on the ground that it would create problems in other cases where a jury was demanded. Rejecting this argument, Mr. Justice Burton said, "Such defects are not insurmountable. If, for example, a jury had been demanded * * *, the decision of jury and nonjury issues could have been handled in a manner comparable to that used when issues of law are tried to a jury and issues of an equitable nature in the same case are tried by the court alone. If special circumstances had demonstrated the inadvisability, in the first instance, of impleading the United States as a third-party defendant, the leave of court required by Rule 14 could have been denied. If, at a later stage, the situation had called for a separation of the claims, the court could have ordered their separate trial. Fed.Rules Civ.Proc., 42(b). The availability of third-party procedure is intended to facilitate, not to preclude, the trial of multiple claims which otherwise would be triable only in separate proceedings. The possibility of such procedural difficulties is not sufficient ground for so limiting the scope of the Act as to preclude its application to all cases of contribution or even to all cases of contribution arising under third-party practice. If the Act develops unanticipated complications, Congress can then meet them to such extent as it may desire to fit the demonstrated needs." (340 U.S., at 555-556, 71 S.Ct., at 407) (footnotes omitted)
 
 
 12
 The federal courts, in adopting a flexible approach, have permitted parallel trials to proceed before the presiding judge and a jury,[9] and have employed the aid of special interrogatories where confusion might otherwise result,[10] and have worked out solutions where other difficulties have arisen.[11] They have been able to do this because both the original action and the claim against the United States were heard in a federal court which could preserve both the limitations of the Federal Tort Claims Act and the right to jury trial in the private dispute by allocating one aspect of the case to a jury and the other to the district judge.
 
 
 13
 In the present case the Act forbids such flexibility of treatment. Here the original action was brought and has been tried in a state court before a jury and not by a federal judge. Congress conditioned the waiver of sovereign immunity on the requirement that the liability of the United States must be determined by a federal district judge without a jury.[12] The Federal Tort Claims Act therefore cannot be construed to permit the United States to be bound by the verdict of a state court jury, even though this is the obligation which Pennsylvania law imposes upon a private property owner. This would be the opposite of a trial in a federal court before a district judge without a jury. To say that the federal judge's endorsement of the judgment declared by the state court jury without having heard the evidence is a compliance with the Congressional requirement would be to substitute form for substance, for it would deprive the United States of its statutory right to contest the issues of its negligence, the contributory negligence of the pedestrian, and the extent of her damages before a federal judge.
 
 
 14
 Since Congress did not consent by the Federal Tort Claims Act that the United States may be bound by a state court's judgment, the judgment obtained by the pedestrian against the City of Pittsburgh in the Common Pleas Court cannot conclude the United States in a suit for indemnity in the district court.[13] If the City wishes to pursue its claim against the United States it may continue its present action in the district court, but it will be a proceeding in which the City must prove all those facts not admitted by the United States which are essential to its cause of action, and the United States will have open to it all of the defenses it may offer against the claim, regardless of whether those issues were adjudicated by the state court judgment as between the pedestrian and the City. For under the Federal Tort Claims Act all factual issues must be adjudicated by a district judge without a jury.
 
 
 15
 The judgment of the court below will be vacated and the cause remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 See Fowler v. Jersey Shore Borough, 17 Pa.Super. 366, 372 (1901); Fisher v. City of Philadelphia, 112 Pa.Super. 226, 170 A. 875 (1934) where Keller, J., reviewed the basis of the doctrine; Wright v. City of Scranton, 128 Pa.Super. 185 (1937); Ferrang v. Michaels, 206 Pa. Super. 43, 47-48, 211 A.2d 96 (1965); Restatement Judgments, § 106, 107(a), Comment c; Restatement Restitution, § 76, Comment f; § 78, Comment e; see also Builders Supply Co. v. McCabe, 366 Pa. 322, 325-326, 77 A.2d 368, 24 A.L.R. 2d 319 (1951). Of course if the defective condition of the sidewalk is caused by conduct of the City or its agents for which it is exclusively responsible, its liability is not secondary. See Wright v. City of Scranton, supra, 128 Pa.Super. at 192, 194 A. 10
 The United States maintains that this doctrine applies here. We need not decide this subordinate question at this time, obscured as it is by conflicting claims regarding the adequacy of the pleading dealing with it. For even on the limited basis of an owner's primary liability, the foundation upon which a pedestrian's judgment against a secondarily liable municipality concludes the property owner does not here exist.
 
 
 [2]
 The Scire Facias Act of 1929 has been suspended absolutely by the Pennsylvania Rules of Civil Procedure, 12 P.S.Appendix (Pa.R.C.P. 2275), which prescribe a similar remedy. See Pa.R.C.P. 2251 et seq
 
 
 [3]
 See also Fisher v. City of Philadelphia, 112 Pa.Super. 226, 170 A. 875 (1934); Wright v. City of Scranton, 128 Pa. Super. 185, 194 A. 10 (1937)
 
 
 [4]
 Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)
 
 
 [5]
 United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L. Ed. 171 (1949), aff'g Yorkshire Ins. Co. v. United States, 171 F.2d 374 (3d Cir. 1948)
 
 
 [6]
 E. g., Hankinson v. Pennsylvania Rd. Co., 280 F.2d 249 (3d Cir. 1960)
 
 
 [7]
 See cases collected in Jayson, Handling Federal Tort Claims; Administrative and Judicial Remedies (1964), § 176.01
 
 
 [8]
 United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951), aff'g Howey v. Yellow Cab Co., 181 F.2d 967 (3d Cir. 1950)
 
 
 [9]
 E. g., D. C. Transit System, Inc. v. Slingland, 105 U.S.App.D.C. 264, 266 F.2d 465, 72 A.L.R.2d 1290 (1959), cert. denied, 361 U.S. 819, 80 S.Ct. 62, 4 L.Ed. 2d 64 (1959)
 
 
 [10]
 See United States v. Schlitz, 9 F.R.D. 259 (E.D.Va.1949)
 
 
 [11]
 Thus, in D.C. Transit System, Inc. v. Slingland, supra, in a negligence action a jury rendered a verdict for the plaintiff against the Transit System for $25,000, which was reduced by remittitur to $15,000., and the presiding judge found against the United States in the amount of $10,000. The lower court held that if the Transit System were required to pay the judgment against it of $15,000. it would be entitled to contribution from the United States for one-half of $7,500., but that if instead the plaintiff obtained payment of the $10,000. judgment against the United States, it would be entitled to contribution of $5,000. from Transit System. On appeal it was pointed out that the United States in consenting to be sued had limited its liability to an amount fixed by a judge rather than by a jury and that the ruling below might require it to pay more than one-half of its liability because the jury awarded a greater amount for the same injuries than had the judge. The court held that it would be unfair to assume that the plaintiff would recover only on the judgment against the United States of $10,000. and thereby to limit the contribution of the Transit System to one-half of that amount or $5,000. It therefore held that if plaintiff should obtain payment from Transit System on the judgment of $15,000. the United States would be required to pay that percentage of the judgment against it which the judgment against Transit System bore to the sum of both judgments; i. e., sixty per cent. "Confining ourselves in this unsettled field of tort law to the needs of this particular case, brought under the Tort Claims Act against the United States, with no statutory rule to guide, we adopt this sixty per cent formula as a fair and equitable solution. It gives weight to the fact that the United States in consenting to be sued has set an outside limit of liability at an amount assessed by a judge. At the same time it gives some weight to the amount of damages assessed by a jury, thus requiring the United States to contribute to the larger judgment paid by the other tort-feasor sixty rather than fifty per cent of the smaller amount assessed by the judge." (266 F.2d, at 470.)
 
 
 [12]
 The legislative history of the act makes it clear that the denial of jury trial and of state court jurisdiction in suits against the United States were the result of deliberate consideration, and were designed to insure the United States against over-generous verdicts. See, e. g., H.R.Rep. No. 1287, 79th Cong., 1st Sess., 1, 4, 12 (Minority objections) (1945); 92 Cong. Rec., 79th Cong., 2d Sess., 1092-93 (1946)
 
 
 [13]
 We do not plant our decision upon the conclusion of the state court that the United States had not waived its sovereign immunity in the state court proceeding and therefore could not be made a party defendant there. Compare Crawford v. Pope & Talbot, Inc., 206 F.2d 784 (3d Cir. 1953), where an erroneous dismissal of a third party defendant because of non-liability was held to have destroyed the effectiveness of the notice to defend, and left the indemnitor free to relitigate all the issues in the indemnity action against it