## Casey *v.* Singer, Appellant.

Argued November 21, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*George P. Williams, III,* with him *Orr, Williams & Baxter,* for appellant.

*Ernest Ray White,* with him *Richter, Lord & Farage,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, January 5, 1953:

William G. Singer leased a building at 25 South 15th Street, Philadelphia. On the pavement in front of this building there existed for at least two years prior to the event which is the subject of the litigation before us, a depression roughly triangular in shape,

measuring 1 to 1½ feet in length, with an area of 2½ square feet, and a depth of from ¼ to ⅜ inch. When rain fell, this shallow concavity filled with water and, if freezing weather arrived before the sun could, with its evaporating process, scoop out the water, the pool became a patch of ice.

Such a situation actually occurred on January 7, 1951; and when, on the following day, Mrs. Helen B. Casey came along, slipped and fell with resultant injuries, she brought suit in the Court of Common Pleas of Philadelphia County against the City of Philadelphia, which in turn, brought in as additional defendants the Pennsylvania Company and others as owners of the premises, William G. Singer as lessee, and Malcolm G. Robertson, trading as Sky Coach Air Travel, as sub-lessee. At the ensuing trial the Trial Judge directed a verdict in favor of the owners of the premises and the sublessee, and the jury returned a verdict against Singer and in favor of the City of Philadelphia. Upon refusal of the Court below to grant his motion for judgment n.o.v. William G. Singer appealed to this Court.

The appellant argues that since the ice on which the plaintiff fell was smooth and uncorrugated by hills, ridges or ruts, there can be no recovery since the decisions of the Pennsylvania courts do not permit recovery for accidents occurring as the result of a general slippery condition of streets or sidewalks. But this case involves not a general slippery condition but a specific, localized and delimited state of affairs. The instrumentality under consideration was an isolated patch of ice. Therefore, all decisions having to do with generalized conditions are not applicable here.

A reversal of the judgment in the court below is contended for on the ground that the plaintiff failed to prove a surface defect, the maintenance of which con-

stituted negligence, or an independent negligent condition such as a leaking spigot or defective rainspout. In support of the latter position the appellant cites the case of *Reedy v. Pittsburgh,* 363 Pa. 365 in assumed contradistinction from the law involved in the controversy at bar. There, a verdict for the plaintiff was affirmed because she fell on a snow covered patch of ice resulting from water discharged over the sidewalk by a downspout which for four years had done this. But the principle of law in the Reedy decision *is* analogous to the one encased here. Whether the water comes from the sky or from a defective spout can be of but little controlling significance in the appraisement of legal responsibility because in either event the responsible property custodian knows that, on account of a condition he has permitted to exist, water will gather and, with the intervention of the magic of congealing temperature, *that* water will turn into a slippery solid. Although in the *Reedy* case, the defective spigot in itself constituted a nuisance in its original state, it remained a harmless agency to the plaintiff until the product of the spigot hardened, with the intervention of winter, into a menacing force. So, also here, while the defect in the sidewalk could have been annoying to fastidious walkers— perhaps to ladies wearing high heels or men wearing soft soled shoes— it presented no danger of substance until the defect filled with water and the water became ice and the ice endured for a sufficient period of time to be covered with dust and, thus camouflaged, it trapped and tripped the unwary wayfarer.

The appellant quotes from *Julian v. Philadelphia,* 147 Pa. Superior Ct. 323, where the Superior Court said: "The cases clearly indicate that a municipality's duty is not limited to the duty of removing hills and ridges from ice which naturally accumulates. It also

owes a duty to protect the public against the artificial, as distinguished from the natural, accumulations of ice on its sidewalks."

The appellant attempts from that quotation to escape responsibility for the ice on his pavement by arguing that the ice was a natural accumulation and not an artificial accumulation. The distinction between natural and artificial accumulations refers to the condition preceding the freezing and not the manner in which the water freezes, because, with the exception of artificial freezing through chemical means (entirely irrelevant to this case) there is only one way for water to freeze and that is by natural methods. Thus, the ice which forms in a small hole in a sidewalk is no different, (in physics,) from the ice which forms over vast stretches of sidewalks. When the law distinguishes between natural and artificial accumulations it refers to that accumulation due to a universal fall of snow followed by a universal freeze, as against the freezing of a small localized spot which a property-owner allows to be created and to exist as the result of some inaction on his part.

When, because of a wide-sweeping arctic demonstration, a general slippery condition ensues, the pedestrian is alerted and consequently is more prepared to meet the condition which confronts everybody in the city or community under the glaze of danger. A property owner or lessor in those circumstances is not liable to those who are injured (within certain minimum periods) in his particular sector of the community peril. However, when, due to his own negligence, he allows the glacial hazard to come into being, he has a duty to abate it by removing it bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it.

The appellant urges that there can be no recovery unless there was antecedent negligence because, since the depression did not constitute actionable negligence and the ice also (because it was slippery and not made up of ridges) was not actionable negligence, no complete act of negligence had arisen. But there is in the realm of legal responsibility also the situation of foreseeable or contingent negligence. A defective condition which is harmless in itself but which, combined with a foreseeable, fortuitous happening, causes injury to a third person, constitutes contingent negligence. The depression, having existed for over two years, the appellant cannot escape being charged with constructive notice of its presence. Being then also chargeable with knowledge of the simple laws of nature, the appellant knew that water would collect in the concrete basin of his pavement and that that water would freeze, creating a menace and hazard to unsuspecting pedestrians. Therefore, knowing of this potentially dangerous condition of his pavement, there was visited upon the appellant the duty to act within a reasonable time to remove that danger. *Whitton v. H. A. Gable,* 331 Pa. 429, 200 A. 644.

In the case of *Diehl v. Fidelity-Philadelphia Trust Co.,* 159 Pa. Superior Ct. 513, 49 A. 2d 190, the plaintiff was injured by falling on a thin sheeting of ice which formed as the result of condensation of steam which was negligently emitted from the adjoining property of the Metropolitan Life Insurance Company. In reversing the judgment n.o.v. which had been entered in the court below for the defendant, the Superior Court said: "The failure of Fidelity-Philadelphia after notice to remove the ice and maintain its sidewalk in a condition of reasonable safety for pedestrians was an act of negligence and a contributing cause of plaintiff's accident. . . . Fidelity-Philadelphia's failure to

remove the ice from its pavement after notice was a clear breach of the duty which it owed to the public to maintain its pavement free from hazards of that character, and in a condition of reasonable safety."

Whether the plaintiff was guilty of contributory negligence was a question of fact for the jury, which the jury resolved in the plaintiff's favor. We cannot say that the circumstances were such as to warrant our declaring the plaintiff's conduct legal contributory negligence. South 15th Street in Philadelphia is a very busy thoroughfare where, it was estimated at the trial, 30,000 persons pass during the day, or some 1200 per hour. In the minimum of 24 hours that the patch of ice had been in existence prior to the accident, it acquired a coating of dirty gray dust which concealed the natural gloss of the ice without arresting its smoothness.

January 8th was a cloudy, dreary and cold day, thus further veiling the shine of the ice and the danger beneath. The accident happened during the crowded lunch period. Other pedestrians preceded and followed the plaintiff as she moved along the sidewalk. One witness testified that only two feet separated the plaintiff from the person ahead of her. In an assembly line procession of walking, to stop to examine one's footing when others are proceeding normally could precipitate tripping and injury in itself. Since, as we have seen, the ice was obscured by a layer of dust, the pedestrian was no more required to sweep away the surface to plumb the depths beneath than one is called upon to lift up and look beneath every piece of stray paper in his path. One witness testified that although he worked within 10 feet of the patch of ice the morning of the accident he did not see it until after the accident. He added that he could have detected the ice if he "had scrutinized it," but, of course

the law does not expect or require scrutinization by travelers as they proceed on their way on streets they have the right to assume are safe and secure.

The question of negligence and contributory negligence were properly submitted to the jury under instructions which were proper and clear, and we see no reason to disturb the verdict.

Judgment affirmed.