**Joseph W. BITTLE, Petitioner,**

**v.**

**Anthony G. BRUNETTI, Anthony C. Streno, Frank Capra, Don Eafanti, Jim Duca, Mike Musso, Delbert T. Dardano, Andy Figliolino, Jim Martelli and Robert L. DeRose, individually and doing business as Primo Investments; and John Does I through V, whose true names are unknown, Respondents.**

No. 85SC476.

Supreme Court of Colorado, En Banc.

Feb. 8, 1988.

**50**

Francis V. Cristiano, Bartholomew and Cristiano, Denver, for petitioner.

Laird Campbell, Marilyn C. Fox, Anderson, Campbell and Laugesen, P.C., Denver, for respondents.

Marc J. Kaplan, Bennett S. Aisenberg, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

MULLARKEY, Justice.

In this negligence action, the plaintiff alleged that the defendants' failure to shovel the sidewalk abutting their property had caused him to fall and injure himself. The trial court concluded that there was no issue of material fact and that, as a matter of law, the defendants owed the plaintiff no duty to remove the snow and ice from the public sidewalk abutting their property. Accordingly, the court granted the defendants' motion for summary judgment. The court of appeals affirmed, 712 P.2d 1112. We granted the plaintiff's petition for certiorari to review two issues: (1) whether commercial property owners have a legal duty to take reasonable measures to remove in a timely manner natural accumulations of snow and ice from public sidewalks abutting their property; and (2) whether violation of a municipal ordinance requiring owners and occupants of property to clear snow and ice from adjacent sidewalks within a reasonable time after a snowstorm gives rise to civil liability under the doctrine of negligence per se. We hold that property owners have no common law duty to shovel the public sidewalks abutting their property and that the municipal ordinance in question did not give rise to civil liability under the doctrine of negligence per se. Accordingly, we affirm the court of appeals.

## I.

On March 4, 1981, at approximately ten o'clock in the morning, the plaintiff, Joseph W. Bittle, was walking on a public sidewalk in front of the commercial property owned by the defendants.[1] The City and County of Denver (the City) owned the public sidewalk. The defendants, their tenants, and the City each had failed to make any effort

[1.] The plaintiff initially sued the owners, the occupants, and the City and County of Denver. John Does I–V were the owners' tenants and occupied the commercial property. The plaintiff did not pursue his claims against them in this action. The plaintiff and the City and County of Denver reached an out-of-court settlement. Because the only claim before this court is the plaintiff's claim against the owners of the property adjacent to the sidewalk on which he fell, when we refer to "the defendants" we mean the owners of the property.

to remove the snow and ice from the sidewalk after the most recent snowfall. Bittle slipped on a coating of snow and ice and fell, injuring himself. He alleged that as a result of the fall, he incurred over $7,000 in actual expenses and lost earnings, as well as $100,000 in pain and suffering and future expenses.

The plaintiff contended that the defendants had a common law duty to maintain the sidewalks abutting their property in a reasonably safe condition. Based on an ordinance which required the defendants to remove snow and ice from the public sidewalks adjoining their property immediately after every snowfall, he also argued that the defendants were liable under the doctrine of negligence per se. The defendants responded that the municipality, rather than the abutting property owner, had the primary duty to keep the public sidewalks in reasonably safe condition. The defendants also argued that the ordinance cited by the plaintiff did not impose a duty to the plaintiff on the defendants. Citing this court's prior decisions, both the trial court and the court of appeals concluded that the defendants had no duty to the plaintiff, either under the doctrine of negligence per se or under the common law. *See Kanter v. City & County of Denver*, 153 Colo. 389, 386 P.2d 349 (1963); *W.T. Grant Co. v. Casady*, 117 Colo. 405, 188 P.2d 881 (1948).

### II.

We first consider the question of whether commercial property owners have a legal duty under the common law to keep the public sidewalks abutting their property reasonably clear of natural accumulations of snow and ice. The plaintiff makes a two-pronged attack on the lower courts' decisions on this question. First, he attempts to distinguish *W.T. Grant Co. v. Casady*, 117 Colo. 405, 188 P.2d 881 (1948) (*Grant*); second, he contends that we should overrule it.

### A.

In *Grant*, we decided that, under the common law, the abutting property owner had no duty to keep public sidewalks reasonably free of snow and ice. Bittle argues that *Grant* does not apply to his complaint because in *Grant* the abutting property owner had used reasonable care. 117 Colo. at 409, 188 P.2d at 883. In the case now before us, the defendants made no effort to remove the snow and ice from the sidewalk. However, our decision in *Grant* was not based on the fact that the abutting property owner had taken appropriate measures to make the sidewalk safe. Instead, we concluded that the common law did not create a duty of property owners to third parties. 117 Colo. at 410–12, 188 P.2d at 883–84.

In addition, the *Grant* rationale has since been applied in a variety of circumstances, making it clear that under Colorado's common law, property owners owe no duty to pedestrians to keep the sidewalks abutting their property reasonably clear of naturally accumulating snow and ice.[2] The "no duty" rule is firmly embedded in Colorado's

---

2. *See, e.g., Kanter*, 153 Colo. 389, 386 P.2d 349 (when owner had cleared sidewalk but left some ice, no affirmative act of owner had created ice, so complaint was properly dismissed as to owner); *Swenson v. LaShell*, 118 Colo. 333, 195 P.2d 385 (1948) (no common law liability imposed on owner or lessee when plaintiff fell on ice created by cars driving across sidewalk to enter lessee's parking lot); *Brame v. Schroeder*, 532 P.2d 763 (Colo.Ct.App.1974) (not selected for official publication) (private defendant not liable for injuries because there was no evidence that any affirmative act of defendant caused formation of ice); *Winn v. First Baptist Church*, 500 P.2d 160 (Colo.Ct.App.1972) (not selected for official publication) (defendant had cleared off sidewalk, but snow had melted and refrozen; because no negligent act of defendant had created freezing, defendant was not liable); *Gemaehlich v. Town of Holyoke*, 486 P.2d 34 (Colo.Ct.App.1971) (not selected for official publication) (no common law duty to clean sidewalk, and no evidence that defendant's partial clearing of sidewalk made it more dangerous, so defendant not liable); *Pelikan v. Swenson*, 485 P.2d 136 (Colo.Ct.App.1971) (not selected for official publication) (same); *Key v. Lerner Shops, Inc.*, 472 P.2d 752 (Colo.Ct.App.1970) (not selected for official publication) (abutting property owner has no duty to keep sidewalk free from natural ice and snow, but cannot create hazard). While the unpublished decisions are not binding precedent, we cite them to illustrate the fact that the Colorado courts have applied the no duty rule frequently and in a wide variety of circumstances.

jurisprudence and is not limited to the exact fact pattern in *Grant.*

### B.

The no duty rule is the common law rule in the majority of jurisdictions. *See generally* Annotation, *Liability of abutting owner or occupant for condition of sidewalk,* 88 A.L.R.2d 331 (1963 & Supps. 1979 & 1987) (especially cases collected in sections 3 and 19); 6 E. McQuillin, *The Law of Municipal Corporations* § 22.12 (3d ed. rev. vol. 1980) ("failure of the abutting property owner to remove snow, which has fallen on the sidewalk, has never been recognized as a ground of action for damages for resulting injuries at common law"). Only two states, New Jersey and Pennsylvania, have taken a contrary view. *See Mirza v. Filmore Corp.,* 92 N.J. 390, 456 A.2d 518, 521 (1983); *Hambright v. Yglesias,* 200 N.J.Super. 392, 491 A.2d 768 (App. Div.1985); *see also Starr v. Philadelphia Transp. Co.,* 191 Pa.Super. 559, 159 A.2d 10 (1960).[3] As one commentator has stated, the cases following the no duty rule "are numerous and well established and will not be overthrown lightly." Morris, *The Role of Criminal Statutes in Negligence Actions,* 49 Colum.L.Rev. 21, 26 (1949). Colorado's no duty rule is consistent with the overwhelming majority view.

### C.

Our common law no duty rule is also consistent with our general tort law in three important respects. First, we always have recognized the importance of ownership in determining an individual's responsibilities.

The question of whether a duty exists is a question of law, requiring consideration of a variety of factors. *See Smith v. City & County of Denver,* 726 P.2d 1125, 1127 (Colo.1986); *Jefferson County School Dist. R-1 v. Justus,* 725 P.2d 767, 769 (Colo.1986). The defendants' ownership, possession, and control are clearly relevant to the existence of a special relationship on which a duty can be based. *See, e.g., University of Denver v. Whitlock,* 744 P.2d 54, 62 (Colo.1987) (lessor which had only "minimal" control over lessee's use of premises did not have duty "to take affirmative action to assure that recreational equipment such as a trampoline [was] not used under unsafe conditions"). *Compare Cool v. Vesey,* 31 Colo.App. 1, 499 P.2d 642 (1972) (since property owner owned stop box—vertical pipe containing shut-off valve for water—located on public "parkway" between curb and sidewalk, he was liable for injuries caused by its negligent maintenance) *and Gray v. Turner,* 142 Colo. 340, 350 P.2d 1043 (1960) (owners and lessees could be liable for injuries sustained as result of fall on snowy sidewalk located on private property) *with Grant,* 117 Colo. 405, 188 P.2d 881 (city, not abutter, is primarily liable for injuries caused by failure to remove snow from public sidewalks).

The plaintiff correctly notes that we have imposed a duty on owners of property to act reasonably in light of the foreseeability of injury occurring on their property. *See Mile High Fence Co. v. Radovich,* 175 Colo. 537, 547–48, 489 P.2d 308, 314 (1971); *Palmer Park Gardens, Inc. v. Potter,* 162 Colo. 178, 425 P.2d 268 (1967); *Gray,* 142

---

**3.** The scope of the duty of abutting owners or occupants under Pennsylvania law is not entirely clear. *Compare Starr,* 191 Pa.Super. 559, 159 A.2d at 12 (implying there is a duty to remove snow from sidewalk area in reasonable amount of time after snowfall) *with Casey v. City of Philadelphia,* 372 Pa. 284, 93 A.2d 470, 472–73 (1953) (owners and occupants are not liable for injuries resulting when widespread snowfall makes abutting sidewalk hazardous, but are liable for injuries caused when abutting sidewalk kept in poor repair becomes dangerously icy; also explaining that slippery ice is not actionable, but ice made up of ridges is). It is also unclear whether the duty is a statutory or common law duty. *Compare Green v. Borough of Freeport,* 218 Pa.Super. 334, 280 A.2d 412 (1971) (without citing statutes or ordinances, court says there is a duty to keep sidewalk area in reasonable repair) *with Mintzer v. Hogg,* 192 Pa. 137, 43 A. 465 (1899) (duty created by acts adopted during the nineteenth century), *overruled in part on other grounds, Lindstrom v. Pennsylvania Co. for Ins. of Lives & Granting Annuities,* 212 Pa. 391, 61 A. 940, 941 (1905) *and Fisher v. City of Philadelphia,* 112 Pa.Super. 226, 170 A. 875, 878 (1934) (liability "based on the statutory duty"). We read Pennsylvania law as imposing a duty under both the common law and negligence per se approaches.

Colo. 340, 350 P.2d 1043; *King Soopers, Inc. v. Mitchell,* 140 Colo. 119, 124–25, 342 P.2d 1006, 1009 (1959). In *King Soopers,* the plaintiff alleged that he was returning to his car after buying groceries in the defendant's store when he fell down on the defendant's icy parking lot. We explained that "the landowner, in discharging his duty to a business visitor, is obligated to exercise reasonable care to *discover* perils," 140 Colo. at 124, 342 P.2d at 1009 (emphasis in original), and that the owner must either make the conditions safe or give a warning. In *Mile High Fence Co.,* the plaintiff was walking down an alley adjacent to the defendant's property after dark and he stepped into a post hole which the defendant had dug on private property. We concluded that the defendant had not acted reasonably and therefore affirmed the trial court's judgment in favor of the plaintiff.

These cases, as well as *Palmer Park Gardens,* 162 Colo. 178, 425 P.2d 268 (landowner liable when tenant's guest sustained injuries after falling in owner's snowy parking lot), and *Gray,* 142 Colo. 340, 350 P.2d 1043, show that people can be held liable for not taking reasonable measures to remove snow and ice from their own property. However, none of these cases imposes liability on a private property owner for injuries incurred on public property. Accordingly, contrary to the plaintiff's assertions, they do not require the conclusion that the defendants had a duty to the plaintiff to clear the public sidewalk on which Bittle fell.[4]

██ Second, absent a special relationship between a plaintiff and a defendant, we will not impose a duty on the defendant to take affirmative measures to prevent a harm to the plaintiff. *See, e.g., University of Denver v. Whitlock,* 744 P.2d at 58. *See generally Prosser & Keeton on the Law of Torts,* § 56 at 376–77 (W. Keeton, D. Dobbs, R. Keeton & D. Owen, 5th ed. 1984 & Supp.1988) (Prosser and Keeton); *Restatement (Second) of Torts* §§ 314, 314A (1965). No special relationship exists between the plaintiff and the defendants in this case or between the class of pedestrians using public sidewalks and the class of people owning or occupying property abutting public sidewalks. Nonliability is, therefore, consistent with our reluctance to impose liability based on nonfeasance.

Finally, we generally have been unwilling to impose liability for injuries caused by natural obstacles or conditions. *See Smith v. City & County of Denver,* 726 P.2d at 1128 ("because the alleged hazard existed as a natural condition ... the [respondent] had no duty to make the area safer by, for example, filling the diving pool with boulders as the petitioner suggests"). The no duty rule has been limited to naturally occurring snow and ice. *See Sill v. Lewis,* 140 Colo. 436, 344 P.2d 972 (1959) (defendant liable for injuries caused by ice created when he discharged water onto sidewalk).[5]

**4.** The amicus brief argues that the Denver Charter has been changed since our decision in *Grant* and that it no longer provides that the Department of Public Works has exclusive control over sidewalks. There is no question, however, that the City has retained ownership of the public sidewalks. The complaint stated that the sidewalk was a public street under the City's management and control. *See* Revised Municipal Code of the City and County of Denver, Colorado (the Code), §§ 320–21 (1950 & revs. 12–31–61 & 1966) (regulations for sidewalks on public right-of-ways); *see also* Code § 350 (1950 & rev. 1976) (showing that snow removal ordinance on which the plaintiff relies is an ordinance regulating "Maintenance and Care of Public Property"). *See generally* 10 E. McQuillin, *supra,* §§ 30.11, 30.62 (3d ed. rev. vol. 1981) (sidewalk is part of street). Because the City

retained ownership, we need not address this "exclusive control" argument.

**5.** The plaintiff contends that the current rule is unfair because if a property owner does not shovel the public sidewalk at all, he is immune from negligence liability, but if he shovels the public sidewalk negligently, he is liable. He cites no case law that supports his contention that one who shovels poorly will be liable, and we find none. We did note the absence of evidence that any "affirmative act" by the defendant had caused the ice to form in *Kanter,* 153 Colo. at 391, 386 P.2d at 350. However, the only situation in which liability for injuries incurred on an icy public sidewalk has been imposed on a private property owner is when the owner discharged water onto the sidewalk and it turned to ice. *Sill,* 140 Colo. 436, 344 P.2d 972; *see also White v. Pines Enterprises, Inc.,* 728

#### D.

The plaintiff in this case urges us to overrule the well-established common law no duty rule in Colorado. He contends that the risk of a pedestrian being hurt on an icy sidewalk is substantial and the cost to the abutting owner is minimal, so it is unfair not to make abutting owners liable. This argument essentially asks us to shift the risk of injuries incurred on snowy and icy public sidewalks from the group of injured pedestrians who presently bear the burden to the group of people owning or occupying private property abutting public sidewalks. The plaintiff has not pointed to any relevant difference between these two groups which could justify such judicial burden shifting, and we see none. The plaintiff does suggest that we distinguish between commercial and noncommercial property owners, apparently to address this problem. However, as the amicus notes, there is no legitimate basis for such a distinction.

We recognize that New Jersey has decided that a commercial landowner's failure to remove snow and ice from the adjacent sidewalk after actual or constructive notice can be the basis for civil liability.[6] *See Mirza,* 92 N.J. 390, 456 A.2d 518, 521; *Hambright,* 200 N.J.Super. 392, 491 A.2d 768. *Mirza* and *Hambright* were based on the Supreme Court of New Jersey's reasoning in *Stewart v. 104 Wallace Street, Inc.,* 87 N.J. 146, 432 A.2d 881 (1981), a case addressing property owners' liability for injuries caused by a "seriously dilapidated" sidewalk. In *Stewart,* the New Jersey Supreme Court concluded that the "no liability" rule was harsh and inadequate, left injured parties without recourse, created disincentives to repair sidewalks, and was derived from conditions that no longer existed. *Id.,* 432 A.2d at 886. While we

sympathize with these concerns, we believe that policy questions such as those addressed in *Stewart* and its progeny would be addressed more appropriately by the General Assembly or by the municipal governments and are not reasons for changing our common law.

The New Jersey decisions illustrate some of the problems that can arise when courts attempt to make these types of policy decisions without guidance from the legislature. First, the New Jersey Supreme Court limited the liability to owners of commercial property, even though it conceded that all property owners, residential as well as commercial, have special interests in the sidewalks abutting their property and that "whether the ownership ... is commercial or residential matters little to the injured pedestrian." *Stewart,* 432 A.2d at 888. Second, the New Jersey courts must now struggle with the question of exactly where to draw the line between commercial and residential property owners. *See, e.g., Hambright,* 491 A.2d at 769 (deciding that non-owner-occupied two-family house was commercial property because it was owned as a business venture, but explaining that court was not deciding whether two-family house would still be commercial if owner lived in one unit). The Pennsylvania cases discussed in footnote 3 of this opinion illustrate similar difficulties in determining the scope of a judicially imposed duty.

To summarize, there is no basis in our common law for distinguishing between commercial and residential property for these purposes. The development of New Jersey law following *Stewart* shows the lack of wisdom of courts entering into this policy-making arena without any legislative guidance. Therefore, we decline to follow the New Jersey approach.

---

P.2d 759 (Colo.Ct.App.1986) (remanding for jury verdict as to whether landscaper breached duty of care by sprinkling public sidewalk on cold day when water turned to ice and caused plaintiff to fall). The court of appeals, when presented with the argument that the defendant shoveled negligently, has repeatedly concluded that there is no evidence that the shoveling made the sidewalk less safe. *E.g., Winn,* 500 P.2d 160; *Gemaehlich,* 486 P.2d 34. The spectre that the plaintiff describes has no foundation in our law

and thus is not a reason to change our no duty rule.

6. Bittle contends that the West Virginia courts have imposed a similar duty on property owners. West Virginia has not modified the common law no duty rule; instead, it has determined that the relevant ordinances create liability. *See* discussion in part III.D, at 57–58.

### E.

For the reasons stated above, we reaffirm our holding in *Grant* that owners of property have no common law duty to remove naturally accumulating snow and ice from the public sidewalks abutting their property. This rule is a well-established part of the common law in Colorado and elsewhere, and it is consistent with other areas of negligence law in Colorado. Any necessary changes in this rule must come from the state legislature or the municipal government.

### III.

The plaintiff argues that the defendants' violation of Revised Municipal Code of the City and County of Denver, Colorado (the Code), section 352.10-1 (1950 & rev. 1975), was negligence per se. Section 352.10-1 provided that:

> The owner, occupant, or agent of the owner of any building[,] property, or vacant lot in the City and County of Denver is required to maintain the sidewalks, the parking, and the curbs, *i.e.,* the area from the property line to the gutter, adjoining said building, property, or vacant lot in a clean condition and to remove snow and ice from adjoining sidewalks immediately after every snowfall.[7]

The defendants argue that this snow removal ordinance cannot be the basis for civil liability because it is penal in nature. Alternatively, they contend that the City cannot shift its duty to third parties and that the ordinance is intended to benefit only the City, not pedestrians.

### A.

■ The defendants' contention that a penal ordinance cannot be the basis for negligence per se is overbroad. In order to establish negligence per se, the plaintiff must show that he is a member of the class which the statute or ordinance was intend-

ed to protect and that his injuries are of the type it was enacted to prevent. *See, e.g., Largo Corp. v. Crespin,* 727 P.2d 1098, 1107–08 & n. 4 (Colo.1986) (these elements establish the breach of a legally cognizable duty; causation is a separate question). *See generally* Prosser and Keeton, *supra,* § 36; *Restatement, supra,* §§ 286–88. If these elements are proved, negligence per se can be based on a penal enactment. *See Largo Corp.,* 727 P.2d at 1108–09 ("A criminal statute may be relied upon to establish negligence per se even though the statute is silent on the issue of civil liability" and a "violation of a safety statute is conclusive evidence of negligence"); *see also Floyd v. Bartley,* 727 P.2d 1109, 1111–12 (Colo. 1986). *See generally* Prosser and Keeton, *supra,* § 36 at 220 (penal character of legislation "will not prevent its use in imposing civil liability"); *Restatement, supra,* § 287 comment a.

The use of the doctrine of negligence per se when a municipal law does not explicitly provide for civil liability is not a recent development. *See, e.g., Lambotte v. Payton,* 147 Colo. 207, 208–09, 363 P.2d 167, 168 (1961) (violation of municipal safety ordinance may be negligence per se when it is proximate cause of injuries); *Dunbar v. Olivieri,* 97 Colo. 381, 50 P.2d 64 (1935) (considering possibility that municipal law prohibiting people from lighting bonfires outside of certain hours established standard of care enforceable through civil action); *Hedges v. Mitchell,* 69 Colo. 285, 194 P. 620 (1920) (violation of municipal traffic ordinance held to be negligence per se).

In *Grant,* we decided only that a violation of the particular penal ordinance in question was not negligence per se. The discussion above should make clear that the fact that an ordinance is penal in nature does not preclude application of the doctrine of negligence per se.

---

7. Section 352.10–1 did not include a specific penalty provision. The general penalty provision in effect at the time of the plaintiff's fall, Code, section 011.10 (1950 & rev. 4–30–58), stated that a fine and/or imprisonment could be imposed for the violation of a provision of the Code for which no specific penalty was provid-

ed. Neither that general penalty provision nor the snow removal ordinance made any mention of civil liability. No substantive changes in the snow removal ordinance have been made since Bittle fell. *See* Code, tit. II, ch. 49, art. VI, § 49–551 (1982 & supps. nos. 14 & 20).

### B.

■ The defendants also assert that a municipality cannot shift its duty to maintain safe sidewalks to private individuals or entities. It is true that a municipality cannot shift its governmental authority to people or entities who are unaccountable to the voters. *See City & County of Denver v. Denver Firefighters Local 858*, 663 P.2d 1032, 1036–37 (Colo.1983) (elected city officials cannot delegate ultimate decision-making authority); *Four–County Metro. Capital Improvement Dist. v. Board of County Comm'rs*, 149 Colo. 284, 295, 369 P.2d 67, 72 (1962) (home rule city cannot delegate its taxing power). However, snow removal is not a municipal "authority" or "power"; it is a duty imposed on municipalities under the common law.

■ By imposing a duty on the landowner, the City is attempting to perform its duty, not to avoid it. This approach is clearly within the municipality's authority. *See* § 31–15–702(1)(a)(III), 12B C.R.S. (1986) (municipality has power "to require the owner or occupant of any premises to keep the sidewalks ... free from snow"). *See generally* 19 E. McQuillin, *supra*, § 54.84 (3d ed. rev. vol. 1985) (municipality can impose duty to remove snow on abutting landowner). We previously have upheld municipal action requiring a property owner to pay the costs of construction and maintenance of sidewalks and other public improvements pursuant to section 31–15–702, because the abutting property owner is "especially benefited by the improvements over and above the general benefit to the public at large." *Bethlehem Evangelical Lutheran Church v. City of Lakewood*, 626 P.2d 668, 672 (Colo.1981). Similarly, the owner or occupant is especially benefited by sidewalks that are free from snow and ice. Accordingly, a municipality can appropriately impose a duty to remove snow and ice from the public sidewalks on the owners or occupants of the abutting property.

In *Grant*, we stated that a municipality could not avoid or suspend its duty to keep public sidewalks reasonably safe. We then explained that we were not "determin[ing] whether the municipality could legally impose a civil liability for [the] violation [of the snow removal ordinance], but in any event it has not, by this section, attempted to do so." 117 Colo. at 412, 188 P.2d at 884. Because of the apparent confusion created by *Grant*, we now make clear that a municipality may properly enact a snow removal ordinance which imposes civil liability for injuries caused by property owners who violate it. The statement in *Grant* that "any attempt of a municipality to shift its liability and primary duty with respect to the safety of its public sidewalks to property owners is ineffectual and abortive," 117 Colo. at 412, 188 P.2d at 884, was dicta addressed to a different issue, *i.e.*, whether a municipality can exempt itself from liability and make the property owner *solely* liable. We do not address this issue here because the City has not tried to exempt itself from liability and because the City is no longer a party to this action.

### C.

The majority rule is that violation of a snow removal ordinance is not negligence per se. This apparent exception to the negligence per se doctrine most frequently has been justified by explaining that snow removal ordinances are intended to benefit the municipality by helping it to perform its duty to keep the public sidewalks safe. Under this theory, because the ordinances are enacted primarily for the benefit of the community as a whole, and individual pedestrians are only indirect beneficiaries, all the requirements for negligence per se are not satisfied. *See* 19 E. McQuillin, *supra*, § 54.84; *Restatement, supra*, § 288(c) & comment d.

Other commentators have offered a variety of justifications for treating snow removal ordinances differently from other safety statutes and ordinances for purposes of negligence per se. For example, in *The Role of Criminal Statutes in Negligence Actions*, Clarence Morris discusses the cases declining to impose negligence per se for the violation of a snow removal ordinance and other areas where the doc-

trine has not been applied. He suggests the following analysis:

> [C]riminal legislation is neither binding nor irrelevant to the scope of civil liability, and ... civil courts have the problem of discriminating on a policy basis between (a) those cases in which civil liability should be extended by analogy to the criminal law, and (b) those cases in which it should remain unchanged even though the defendant has run afoul of the criminal law.

Morris, *supra*, at 25 (footnote omitted). Under Morris' view, relevant factors might include whether a violation is a major or minor misdeed, *id.* at 27, and whether the criminal enactment imposes punishment in the absence of fault, *id.* at 28.

According to Prosser and Keeton, "the most satisfactory explanation" of the negligence per se cases is that the court voluntarily adopts legislative standards when doing so furthers the policy underlying the statute. Under their approach, laws which are intended solely to protect the interest of the community at large should not result in negligence per se because that would not further the legislative purpose. *See* Prosser and Keeton, *supra*, § 36 (giving as examples blue laws, snow removal ordinances, and auto registration statutes). Their legislative intent analysis focuses on the policies which the legislature intended to further, not on the remedies which it intended to provide. *Cf. Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) (one factor federal courts should consider in deciding whether a private right of action is implicit in a statute is whether there is any indication that Congress intended to either create or deny such a remedy).

Another approach was offered in Thayer, *Public Wrong and Private Action*, 27 Harv.L.Rev. 317 (1913–14), considered to be a classic article on this subject. Thayer distinguished between enactments prohibiting malfeasance and those prohibiting nonfeasance. He concluded that civil liability should be imposed based on an enactment requiring action only when there was a common law duty to act; the enactment would then provide a more exact standard of care. *Id.* at 330–31. When, as in the sidewalk cases, there was no common law duty to act, the enactment should be understood to impose a duty only to the public as an entity, unless the legislature specifically provided a private remedy. *Id.* at 329–33. Yet another theory is that the courts imposed liability on the municipality because the municipality was the best loss distributor in an era before liability insurance. James, *Statutory Standards and Negligence in Accident Cases*, 11 La.L.Rev. 95, 116 (1950–51).

Although the reasoning is varied, the conclusion is almost universal—it is not fair or appropriate for courts to use snow removal ordinances to impose civil liability absent explicit instructions from the legislative branch of government.

### D.

We have previously explained that "[i]n contrast to a statutory cause of action, the doctrine of negligence per se is a part of the common law, created by the courts." *Largo Corp.*, 727 P.2d at 1108. *See generally Restatement*, *supra*, § 286 & comment d (courts "may adopt" the legislative standard). The determination of whether the violation of a statute or ordinance establishes a breach of a legally cognizable duty requires a careful evaluation of the policies underlying the enactment and a variety of other factors. *Cf. Justus*, 725 P.2d at 769 (determination of whether duty exists in common law negligence action "involves weighty policy questions whose resolution requires consideration of a number of different factors").

Not every statute or ordinance will be held to establish a duty and a standard of care under the negligence per se doctrine. For example, we declined to hold that a statute requiring the industrial commission to inspect workplaces created a legally cognizable duty to employees. *Quintano v. Industrial Comm'n*, 178 Colo. 131, 495 P.2d 1137 (1972). Although we acknowledged that the statute specifically designated employees and guests as the intended beneficiaries, we decided that

it implicated an area in which we would not create a damages remedy unless the legislature's expression of its intent to create civil liability was "loud and clear, *i.e.*, by authorizing the remedy." *Quintano*, 178 Colo. at 135–136, 495 P.2d at 1139. Similarly, the long history of our common law no duty rule creates a presumption of reliance on that rule and renders automatic application of the negligence per se doctrine inappropriate. Instead, when there is a well-established common law no duty rule, we believe it is appropriate to consider such factors as the following: any changes in circumstances subsequent to the development of the common law rule, any indication of legislative intent to create or deny a damages remedy, the effect liability would have on the policies underlying the enactment or on other governmental policies, the parties' legitimate expectations, the severity of the offense, and the fault or lack thereof of the offender. This list is not intended to be exclusive, nor is it intended to change the general practice of using the negligence per se doctrine in most cases where the elements described in *Largo Corp.*, 727 P.2d at 1108, are present.

Here, while the fact that the Denver snow removal ordinance required property owners to shovel the public sidewalks is certainly an important factor in our analysis of whether a duty exists, it is not the only factor. We are not working on a blank slate and the well-established common law no duty rule cannot be ignored. While the ordinance obviously benefits pedestrians indirectly, in light of the common law no duty rule we conclude that the ordinance should be understood as one intended primarily to benefit the municipality by helping it to perform its duty to keep the public sidewalks safe. *See generally* 19 E. McQuillin, *supra*, § 54.84; Prosser and Keeton, *supra*, § 36 at 223; *Restatement, supra*, § 288(c) & comment d (snow removal ordinance used to illustrate rule that standard will not be adopted from legislation intended to impose on the actor a service which the government has undertaken to provide the public). The fact that the penalty imposed by the ordinance is unrelated to the amount it would cost the City to remove the snow does not, as the plaintiff suggests, preclude this interpretation.

Such an interpretation has several strengths. First, it gives due weight to our common law no duty rule. The plaintiff has not shown any relevant legal or factual changes subsequent to the development of the no duty rule. The hazards posed by snow and ice on sidewalks have not changed and snow removal methods have not changed appreciably. This situation is quite unlike *Largo Corp.*, 727 P.2d 1098, where we held that the law prohibiting the sale of alcohol to a visibly intoxicated person could be relied upon to establish negligence per se. The background there included society's improved understanding and heightened awareness of the effects of alcohol and the increased and easily foreseeable risk of serious injuries occurring when an intoxicated person drives a car. *See Largo Corp.*, 727 P.2d at 1101 (explaining that "modern era of dramshop liability" began with the recognition that driving to and from bars was commonplace and alcohol-related car accidents were frequent). The plaintiff's repeated assertions that, for unspecified reasons, the no duty rule has outlived its usefulness, and the amicus brief's unsubstantiated assertion that Denver had more sidewalks in 1981, when Bittle fell, than in 1948, when we decided *Grant*, are not of the same magnitude as those changes. *Cf. World Almanac and Book of Facts* 263 (H. Lane 1986) (not obvious that size of City has greatly increased—according to U.S. Bureau of Census, population of City and County of Denver in 1950 was 415,786 and in 1980, it was 492,365).

Second, in *Grant* we stated that the purpose of the sidewalk ordinance clearly was "to eliminate a source of danger to pedestrians *by the imposition of a penalty.*" 117 Colo. at 412, 188 P.2d at 884 (emphasis added). *See also Swenson v. LaShell*, 118 Colo. 333, 335, 195 P.2d 385, 387 (1948) (stating in dicta that ordinance had not created liability between citizens). During the many years following our decisions in *Grant* and *Swenson*, the City has recodi-

fied and modified the snow removal ordinance without making any attempt to change this result. Therefore, it should be deemed to have approved our interpretation of the ordinance. *Cf., e.g., Hewlett–Packard Co. v. State,* 749 P.2d 400, 406 (Colo.1988) (applying this principle to statutory construction); *In re Estate of Daigle,* 634 P.2d 71, 76 (Colo.1981) (same). Third, this interpretation does not thwart the reasonable expectation, which may have been created by our common law no duty rule and its repeated acceptance by other jurisdictions and the commentators, that only the penalty explicitly provided for by ordinance would be imposed upon violators. Fourth, it avoids the potential for disproportionately large liability based on a minor offense.

We recognize that West Virginia and Pennsylvania have taken a different approach. *See, e.g., Fisher v. City of Philadelphia,* 112 Pa.Super. 226, 170 A. 875 (1934) (primary duty of keeping public sidewalk in repair rests on abutting owner, who is statutorily liable for injuries caused by defects in sidewalk); *Crago v. Lurie,* 166 W.Va. 113, 273 S.E.2d 344 (1980) (ordinance imposed duty on owners, but not lessees); *Rich v. Rosenshine,* 131 W.Va. 30, 45 S.E.2d 499, 504–05 (1947) (ordinance imposed duty on occupants and users, but not owners).

However, as explained above, because of the long history of the common law no duty rule and the absence of any changed circumstances, we conclude that imposing negligence liability would do violence to people's reasonable expectations for no legitimate reason. We therefore prefer the approach adopted in Oregon, which makes clear that a municipality can create a right of action against abutting owners "by express provision," but that a snow removal ordinance imposing only a penalty does not change the common law no liability rule. *See Papen v. Karpow,* 56 Or.App. 673, 643 P.2d 375, 377–79 (1982). *Cf.* Annotation, *Statute or ordinance requiring abutting owner or occupant to remove snow and ice from sidewalk as affecting liability for injuries,* 82 A.L.R.2d 998 (1962 & Supps. 1979 & 1987) (majority rule is that ordinance imposing only penalty does not create damages remedy).

For the above reasons, we conclude that unless the municipal government or the General Assembly specifically states that property owners will be civilly liable for violation of a snow removal ordinance, we will continue to follow our common law no duty rule.

### IV.

In conclusion, property owners have no common law duty to remove naturally accumulating snow and ice from public sidewalks abutting their property. Because the ordinance in question did not expressly provide for imposition of civil liability on violators, it did not create a duty to pedestrians and we will not use it as the basis for negligence per se.

We therefore affirm the court of appeals, which affirmed the district court's grant of summary judgment in favor of the defendants.